**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GARY TOTH, | : | CIVIL NO: **1:CV-13-1777** |
| | : | |
| Plaintiff | : | |
| | : | (Chief Judge Conner) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

### I. PROCEDURAL HISTORY.

Plaintiff, Gary Toth, filed, through counsel, a Complaint on June 28, 2013, appealing the final decision denying his application for Social Security Disability Insurance Benefits, pursuant to 42 U.S.C. §405(g). (Doc. 1). Plaintiff paid the filing fee. The Complaint named as Defendant Michael J. Astrue former Commissioner of Social Security. As both parties recognize, Defendant is now Carolyn W. Colvin, Acting Commissioner of Social Security.

This Court has jurisdiction over this case pursuant to 42 U.S.C. §405(g) and 42 U.S.C. § 1383(c)(3).

On August 29, 2013, the Defendant filed an Answer to the Complaint. (Doc. 7). Defendant also filed the complete administrative record. (Doc. 8). On October 2, 2013, the Plaintiff filed his Brief in support of his Complaint. (Doc. 9). On October 31, 2013, the Defendant filed her Brief. (Doc. 10). Plaintiff did not file a Reply Brief.

Plaintiff Toth, born on December 12, 1964, filed an application for Disability Insurance Benefits ("DIB") , pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. §§401-434, on March 28, 2010, alleging disability due to his degenerative disc disease back condition and pain since October 16, 2009. (TR. 20).[1] Plaintiff has not engaged in substantial gainful activity since his alleged onset date. Plaintiff met the insured status requirements of the Act through September 13, 2013. Plaintiff 's DIB application was initially denied by the Agency on September 21, 2010. (TR, p. 16). The Plaintiff filed a written request for a hearing. On December 2, 2011, a hearing was held before the Administrative Law Judge ("ALJ") in Scranton, Pennsylvania. (TR, pp. 13-26). Plaintiff, who at the time was 46 years old, testified at the hearing and vocational expert Giorgio also testified at the hearing.

On May 24, 2012, the ALJ issued a decision denying Plaintiff's application for disability benefits and finding that Plaintiff was not under a disability within the meaning of the Act from October 16, 2009, through the date of the decision. (TR, p. 16). The ALJ found that Plaintiff's back pain prevented him from performing his past relevant work at the heavy exertional level. However, the ALJ found that Plaintiff had the capacity to perform a limited range of sedentary work with a sit/stand option. The Plaintiff appealed the ALJ's decision to the Appeals Council. On June 5, 2013, the Appeals Council denied the Plaintiff's appeal. The Plaintiff then initiated the instant civil action in this federal Court. (Doc. 1).

---

[1]We use "TR" for our citations to the administrative record, found at Doc. 8, followed by the page number of the record.

For the reasons set forth below, we will recommend that the Plaintiff's appeal from the decision of the Commissioner of Social Security denying his claim for DIB benefits be denied.

## II. STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999); *Johnson*, 529 F.3d at 200. It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).

Furthermore:

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III. DISABILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520. *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. *See* 20 C.F.R. § 404.1520.

The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. § 404.1520.

Here, the ALJ proceeded through each step of the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Act during the relevant time of this case, October 16, 2009, through May 24, 2012. (TR, p. 26). At step one, the ALJ found that the Plaintiff met the insured status requirements of the Social Security Act through September 30, 2013. (TR, p. 18). At step two, the ALJ concluded Plaintiff did not engage in substantial gainful work activity at any time since October 16, 2009, the alleged onset date of his disability. (*Id.*). At step three, the ALJ concluded that the Plaintiff's impairments, namely, lumbar degenerative disc disease, status-post surgical fusion with late effects in lumbar arthrodesis syndrome, were severe within the meaning of the Regulations. The ALJ also found

that Plaintiff 's mental impairment, namely, depression, was not severe. (*Id*., pp. 18-19). At step four, the ALJ found that the Plaintiff's impairments did not meet or medically equal one of the listed impairments. (*Id.*, p. 20). *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. The ALJ considered Listings 1.00, *et seq*., and 11.00, *et seq*.

The ALJ also determined that the Plaintiff had the residual functional capacity ("RFC") to perform a range of sedentary work.[2] *See* 20 C.F.R. §§ 404.1567(a). (*Id.*, p. 20). Further, the ALJ also found that the Plaintiff could occasionally lift and carry 10 pounds, and up to 10 pounds frequently. The ALJ found that Plaintiff could sit and stand and walk for the amount of time required for sedentary work, but that he would have to have a sit/stand option at his will. The ALJ further found that could use his upper extremities without limitations, including reaching, handling and motor dexterous coordination, but that he could only occasionally operate foot controls. The ALJ found that Plaintiff could not climb ladders, scaffolds or ropes, and that he could occasionally climb ramps or stairs and engage in balancing or stooping. The ALJ found that Plaintiff could not crawl or kneel, but that he could crouch occasionally. The ALJ found that Plaintiff could not bend to the floor. The ALJ also found that Plaintiff should not be exposed to extreme heat or cold, to vibration, to fumes, odors, dusts, gases and poorly ventilated work areas, and that Plaintiff could not work at unprotected heights or with

[2]Sedentary work is defined as follows: (a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §404.1567(a).

dangerous moving machines. (*Id.,* p. 20).

At step six, the ALJ found that the Plaintiff was not capable of performing any of his past relevant work, *i.e.*, carpenter, ice cream truck proprietor, and construction worker. (*Id*., p. 24. The ALJ found that considering the Plaintiff's age (44 at onset date), education (high school), work experience and residual functional capacity, and based on the testimony of the vocational expert ("VE"), there were significant numbers of jobs in the national economy which the Plaintiff could perform. *See* 20 C.F.R. 404.1569 and 404.1569(a). (*Id*., p. 25). The ALJ therefore concluded that the Plaintiff was not under a disability, as defined in the Act, at any time from October 16, 2009, the alleged onset date, through May 24, 2012, the date of the ALJ's decision. *See* 20 C.F.R. § 404.1520(g). (*Id*.).

**IV. BACKGROUND.**

The Plaintiff was born on December 12, 1964, and was forty-four (44) years old at his onset date, which classifies him as a younger individual pursuant to the Act. *See* 20 C.F.R. 404.1563. (*Id.,* p. 24). At the time of the ALJ hearing, Plaintiff was almost 47. (*Id.,* p. 36). Plaintiff has a high school education and is able to communicate in English. (*Id.,* p. 24). The ALJ found that Plaintiff could not perform his past relevant work.

Plaintiff was diagnosed with degenerative disc disease in his lumbar spine. Plaintiff had a hiatal hernia and asthma but he was treated with medications (Prilosec and an inhaler) for these conditions which kept them under control. Plaintiff also had some depression related to the effects of his back condition and that he was seeing a psychiatrist. Plaintiff stated that the psychiatrist prescribed Ambien to help him sleep since his pain wakes him up at night.

However, Plaintiff only claimed that his disabling impairment was his back condition. (*Id.,* pp. 34-39, 42).

In April 2011, Dr. Gillick performed on Plaintiff a lumbar fusion surgery at L4 and S5. While Plaintiff 's pre-surgery testing showed an abnormal EKG, *i.e.*, cardiomyopathy, Plaintiff did not receive any medical treatment or medication for a cardiac condition. Also, Plaintiff was still cleared to have surgery despite his enlarged heart muscle and shortness of breath. Nor did Plaintiff have any heart palpitations or other typical heart attack symptoms. As such, Plaintiff did not claim any cardiac condition was a disabling impairment. (TR pp. 34-39, 55-56).

Specifically, on April 5, 2011, Dr. Gillick performed a laminectomy and decompression surgery at L1-2 and L2-3 with instrumented fusion at L-4 to the sacrum. (*Id.,* p. 336).

After his surgery, Plaintiff stated that the was still having a lot of lower back pain, rated a 9 on a scale of 1-10, but he was not have radiating symptoms and he was not having pain in the leg. Post surgery, Plaintiff was given Percocet for the pain but he was not on any prescription pain medication at the time of his hearing. Plaintiff stated that Dr. Gillick's last prescription for Percocet was two months before his hearing. Plaintiff was also told to take Advil for pain. Plaintiff was told that he should have physical therapy for his low back pain if it persisted. Also, at the time of his hearing, Plaintiff was still seeing Dr. Gillick for post-surgery care and he had an appointment the following Monday (December 5, 2011. (*Id.,* pp. 39-43).

Plaintiff stated that he worked part time at Walmart for about four months before his April 2011 surgery and that he handed out food samples. Prior to is surgery, Plaintiff worked the latter part of 2009 and the beginning of 2010 as a union carpenter, doing heavy work such

as sheet rock, framing and trimming, but he only could work a few weeks. Plaintiff stated that he was scheduled to work five days a week for eight hours per day but he was not able to work five days any week due to his back condition and since it was heavy work. Pre-surgery, Plaintiff did not try any work less than heavy carpentry work since he was accustomed to being a carpenter. (*Id.,* pp. 43- 47).

Plaintiff stated that standing too long and sitting too long caused him pain. Plaintiff stated that he was wearing a back brace at the time of his hearing. Plaintiff also stated that he took medication for depression but that he did not think it helped. In a typical day, Plaintiff stated that he watched a lot of T.V., he sits and then paces the floors when he could not sit anymore, and that he laid down to nap since he did not sleep well at night. Plaintiff stated that he did not do many chores around the house since his surgery. Prior to his surgery, Plaintiff did chores, drove, and worked part time at Walmart handing out samples while standing (3 days per week at 6 hours per day, with 3 breaks to sit) for four months. After his surgery, Plaintiff stated that he could sit for about 10 minutes at a time and then he had to move around and lay down. Also, Plaintiff stated that after his surgery, he saw Dr. Gillick once per month. (*Id.,* pp. 50- 55).

As mentioned, a vocational expert, Ms. Giorgio, testified at the Plaintiff's hearing before the ALJ. The ALJ posed a hypothetical question to the VE, inquiring whether significant jobs existed in the national economy for an individual of the Plaintiff's age, education, work experience and residual functional capacity could perform. (*Id.*, pp. 58-59). The vocational expert testified that a person with these limitations could perform the requirements of representative occupations, such as a hand packer and a packager, a production worker, and

a freight stock material worker. (*Id.*, p. 60).

The ALJ held the record open for Plaintiff's post-surgery exams by Dr. Gillick, including Plaintiff 's December 5, 2011 appointment. (*Id.*, pp. 60-61).

Thus, Plaintiff suffers from various physical impairments and a mental impairment. However, the ALJ found that the Plaintiff had only one severe impairment, namely, lumbar degenerative disc disease, status-post surgical fusion, with late effects resulting in lumbar arthrodesis syndrome. The ALJ also found that Plaintiff's heart condition and mental impairment, namely, depression, were not severe. In fact, as the ALJ found, there was no evidence in the record which indicated that Plaintiff's heart condition and depression were severe impairments. (*Id.*, p. 19). In any event, Plaintiff does not challenge the ALJ's findings regarding his heart condition and mental impairment.

**V. DISCUSSION.**

As stated, the ALJ denied Plaintiff's claim for DIB. Plaintiff appeals to this federal Court the final decision of Defendant denying his claims for the stated benefits. Plaintiff argues that substantial evidence does not support the ALJ's decision denying his claim for DIB.

"[The District] Court's review is plenary with respect to all questions of law." *Hansford v. Astrue*, 805 F.Supp.2d 140, 143 (W.D.Pa. 2011)(citation omitted). "With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is 'supported by substantial evidence.'" *Id.*(citations omitted). "The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record." *Id.*(citation omitted). Rather, the Court must review the findings of fact and conclusions of the ALJ to

determine whether they are supported by substantial evidence. If the ALJ's findings of fact are supported by substantial evidence, they "shall be conclusive." *Id*.(citations omitted). Thus, the Court applies a "deferential standard of review." *Id*.(citations omitted).

In *Hansford v. Astrue*, 805 F.Supp.2d at 143-44, the Court stated:

> In order to establish disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

(Internal citations omitted).

Substantial employment is defined as "work activity that involves doing significant physical or mental activities." *See* 20 C.F.R. § 416.972.

Thus, Plaintiff must have an impairment which is expected to result in death or to have lasted or be expected to last at least for twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i); *Morales v. Apfel,* 225 F.3d 310, 315–316 (3d Cir.2000). Additionally, to receive DIB, a Plaintiff must also show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. §404.131(a).

Moreover, when the Court reviews the ALJ's decision, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v.*

*Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997)(citing *Casias v. Secretary of Health & Human Servs*., 933 F.2d 799, 801 (10th Cir.1991)("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.")). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

In the instant case, the ALJ found that Plaintiff was under the retirement age and met the insured status requirements of the Social Security Act through September 30, 2013. However, Plaintiff argues that substantial evidence does not support the ALJ's finding that he was not disabled. Specifically, Plaintiff argues that substantial evidence does not support the ALJ's finding regarding his (Plaintiff's) credibility as to his complaints of pain. Plaintiff contends that the ALJ failed to afford his complaints of pain the proper weight. Plaintiff states that the ALJ erroneously found that his symptoms were not credible. (Doc. 9, p. 8). The ALJ considered Plaintiff 's testimony at the hearing that his back conditions "affect his ability to sleep, dress, bathe, lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, use his hands, and get along with others." The ALJ also considered Plaintiff 's testimony that "he can only walk for 10 to 15 minutes before needing to stop and rest." The ALJ found that Plaintiff's impairments could cause some of his alleged symptoms, but the ALJ held that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are not supported by the medical evidence and to the extent that they are inconsistent with the above [RFC]." (TR, p. 21).

As discussed above, an ALJ's findings based on the credibility of a claimant are to be accorded great weight and deference, since an ALJ is charged with the duty of observing a witness's demeanor and credibility. *See Walters*, 127 F.3d at 531. Further, the ALJ is charged with the obligation of indicating in his decision which evidence he has rejected and which he is relying on as the basis for his finding. *Schaudeck*, 181 F. 3d at 433. An ALJ may find testimony to be not credible, but he must give great weight to a claimant's subjective testimony. *Id*.

In making this assessment, the ALJ is guided both by statute and by regulations. This guidance eschews wholly subjective assessments of a claimant's pain. Instead, at the outset, by statute the ALJ is admonished that an "individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all the evidence. . . , would lead to a conclusion that the individual is under a disability." 42 U.S.C. § 423(d)(5)(A).

Applying this statutory guidance, the Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. §§ 404.1529, 416.929. Under these regulations, first, symptoms, such as pain, shortness of breath, and fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §§ 404.1529(b), and 416.929(b). Once a medically determinable impairment which results in such symptoms is found to exist, the

Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. §§ 404.1529(c), and 416.929(c). In so doing, the medical evidence of record is considered along with the claimant's statements. 20 C.F.R. §§ 404.1529(c), and 416.929(c). Social Security Ruling 96-7p gives the following instructions in evaluating the credibility of the claimant's statements regarding her symptoms: "In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p. SSR 96-4p provides that "[o]nce the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the pain or other symptoms alleged has been established on the basis of medical signs and laboratory findings, allegations about the intensity and persistence of the symptoms must be considered with the objective medical abnormalities, and all other evidence in the case record, in evaluating the functionally limiting effects of the impairment(s)." SSR 96-4p.

In his decision, the ALJ found Plaintiff's subjective testimony only partially credible and he found that Plaintiff was not credible to the extent Plaintiff stated that he had more limitations due to his pain than the restrictions which the ALJ included in his RFC finding. Plaintiff argues that the ALJ's finding as to his credibility was not supported by substantial evidence since the ALJ failed to properly consider his medical records and the objective medical tests, and since the ALJ

used his work history against him. We agree with Defendant that "Plaintiff 's argument has no merit because it seeks [to] isolate the few paragraphs of the ALJ decision relating to his work history (Tr. 24) from the remainder of the decision (Tr. 16-24)." (Doc. 10, p. 17). As stated above, in determining if the ALJ's decision is supported by substantial evidence the Court may not parse the record but rather must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d at 970. We find that the record of Plaintiff as a whole supports the ALJ's decision that Plaintiff's testimony as to the effects and intensity of his back symptoms were not fully credible. As Defendant points out, the ALJ included fifteen paragraphs in his decision, after his credibility finding, to show how the Plaintiff's medical records and objective medical tests did not entirely support Plaintiff's testimony as to the effects and intensity of his back symptoms and pain. (TR 21-23). We do not repeat herein these fifteen paragraphs in the ALJ's decision, but we agree with Defendant that they demonstrate the ALJ's decision as to Plaintiff's credibility is supported by substantial evidence.

Prior to surgery with Dr. Gillick, Plaintiff was diagnosed with advanced degenerative disc disease at L4-5 and L5-S1 and midline disc herniations at L1-L2-L2-L3 which caused borderline stenosis. (TR 326, 350). On April 5, 2011, Dr. Gillick operated on Plaintiff and performed a laminectomy decompression at L1-L2 and L2-L3, and instrumented fusion of L4 to the sacrum.

The ALJ stated that Dr. Gillick saw Plaintiff on September 7, 2011, for a post-surgery exam. At this appointment, Plaintiff stated that he still had pain and was taking 10 mg Percocet 3-4 times per day. Plaintiff's pain did not radiate to his legs. Plaintiff wore a back brace. Dr. Gillick found that Plaintiff had a negative straight leg raising. Dr. Gillick found that Plaintiff's motor and sensation of his lower extremities were normal, and that his reflexes were full and

symmetric. Dr. Gillick also found that Plaintiff should wean himself off of the back brace and decrease his use of Percocet. (TR 328).

Additionally, Dr. Gillick examined Plaintiff on December 5, 2011, shortly after Plaintiff's ALJ hearing, and found that normally Plaintiff would be ready for physical therapy, but that Plaintiff wanted to wait due to an upcoming hearing since he feared therapy would aggravate his pain level. Dr. Gillick found that Plaintiff had pain when he flexed and extended, and that Plaintiff's straight leg raising caused back pain. However, Dr. Gillick found that Plaintiff's motor and sensation were normal, that his reflexes were 1+ and symmetric. Plaintiff 's x-ray looked good and the instrumentation was intact. Plaintiff 's alignment was good, and the x-ray showed reasonably good healing. (TR 341).

A state examining consultant examined Plaintiff and in February 2012, found Plaintiff reported that he still had low back pain but that it did not radiate into his legs. Plaintiff stated that the pain has limited his abilities to perform various activities such sitting, standing, and walking for too long. Plaintiff still wore a back brace and he used a cane. Plaintiff's motor strength was functional, and 5/5 in his lower extremities. Plaintiff's range of motion in his hips, knee, and ankle were within normal limit. Plaintiff was found to have lumbar arthrodesis and to possibly require epidural steroid injections and acupuncture for pain management as well as physical therapy. (TR 350-352).

Based on our review of the above medical records, we concur with Defendant that "[a]fter Plaintiff 's surgery in April of 2011, the medical records show he was not limited, beyond the restrictions included in the [ALJ's] RFC, for a period of more than twelve months." (Doc. 10, p. 20).

Further, we do not find that the ALJ used Plaintiff's work history against him in determining his credibility. The ALJ stated that Plaintiff's earnings record showed Plaintiff had "a sporadic work history with significant gaps in his earnings" and that Plaintiff 's annual earnings since 1998 only exceeded $10,000 once. The ALJ then stated that "throughout most of the relevant period of adjudication, [Plaintiff's] work activity rarely rose to the level of substantial gainful activity." The ALJ concluded that "[t]his calls into question whether or not [Plaintiff's] current state of being 'unemployed' is related to his alleged medical conditions or due to other reasons." (TR 23-24).

The ALJ also considered the fact that Plaintiff worked after his alleged disability onset date of October 2009. In January 2010, Plaintiff reported that he was working at Gertrude Hawk stuffing envelopes and as an independent contractor. After his alleged disability onset date, Plaintiff also worked as a carpenter and at Walmart handing out samples. The ALJ found that Plaintiff 's work after his alleged disability onset date did not constitute substantial gainful employment, but he stated that Plaintiff 's "work activity calls into question his allegations that he had been disabled since October 2009." (TR 24).

In light of the above discussion regarding Plaintiff 's medical evidence and employment records, we do not find that the ALJ improperly used Plaintiff's work history to determine Plaintiff 's credibility. As discussed, we find that the ALJ's decision as to Plaintiff 's credibility is supported by substantial evidence, including the fifteen paragraphs in the ALJ's decision detailing Plaintiff 's medical history. In fact, during Plaintiff 's hearing, the ALJ indicated that while Plaintiff tried to go back to work as a carpenter for a short period, such work was too heavy for Plaintiff. In his decision, the ALJ found that Plaintiff 's work as a carpenter was well in excess of Plaintiff's

RFC. Further, the ALJ found that Plaintiff could not perform any of his past relevant work, including carpentry. The ALJ found that Plaintiff had the RFC to perform only a limited range of sedentary work and we find that this decision was supported by substantial evidence.

Accordingly, we find that substantial evidence supports the ALJ's credibility determination, and his decision that Plaintiff was not disabled. We agree with Defendant that the decision of the ALJ is based on substantial evidence and that the ALJ made a proper assessment of the medical evidence, as well as Plaintiff's RFC and pain and limitations.

Thus, we will recommend that Plaintiff 's appeal be denied.

**VI. RECOMMENDATION.**

Based upon the foregoing, it is respectfully recommended that the Plaintiff's appeal from the decision of the Commissioner of Social Security denying his claim for DIB benefits, **(Doc. 1),** be denied.

**s/ Thomas M. Blewitrt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: February 14, 2014**

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GARY TOTH, | : | CIVIL NO: **1:CV-13-1777** |
| | : | |
| Plaintiff | : | |
| | : | (Chief Judge Conner) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| CAROLYN W. COLVIN, | : | |
| ACTING COMMISSIONER OF | : | |
| THE SOCIAL SECURITY | : | |
| ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

**NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **February 14, 2014.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

______Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: February 14, 2014**